| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING in part and DENYING in part Defendant's Motion to Dismiss

Pending before the Court is Defendant Michael Peerson's ("Defendant" or "Deputy Peerson") Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. # 30. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the supporting and opposing papers, the Court GRANTS in part and DENIES in part the Motion.

I. Background

On May 10, 2013, Plaintiff Norwood Price ("Plaintiff") filed a complaint against Defendants Deputy Peerson, Akal Security ("Akal"), and the Government, asserting causes of action for: (1) Constitutional violation of the First Amendment right to redress grievances to government without retaliation; (2) Constitutional violation of the Fourth Amendment right to be free from unreasonable seizure; (3) supervisor liability; (4) false imprisonment; (5) negligence; (6) violation of Section 52.1 of the Bane Act, Cal. Civ. Code § 52.1, for violating Plaintiff's First Amendment rights; and (7) violation of Section 51.2 of the Bane Act, Cal. Civ. Code § 52.1, for violating Plaintiff's Fourth Amendment rights. *See* Dkt. # 1.

Plaintiff alleges that during a visit to a federal courthouse, Deputy Peerson violated his Constitutional rights after he respectfully inquired about a security policy that required Plaintiff to remove his shoes before entering the courthouse. *FAC* ¶¶ 13-15. Plaintiff alleges that he went to the U.S. Marshal's office, asked Deputy Peerson why he needed to remove his shoes, and asked whom he should contact about the policy requiring shoe removal. *Id.* ¶ 14. After

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

#30 (11/25 hrg off)

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

"thanking" Deputy Peerson for entertaining his question about the policy, Plaintiff alleges that Deputy Peerson "summoned" other officers to intentionally seize Plaintiff. *Id.* ¶ 38. Specifically, Plaintiff claims that as he walked toward the courthouse exit, a courthouse security officer ("CSO") donning a "U.S. Marshal" badge put up his hand to signal that Plaintiff should stop, and asked Plaintiff to stop. *Id.* ¶¶ 14-15. Two other CSOs then "encircled" Plaintiff and directed him to an enclosed waiting room outside the main hallway of the courthouse. *Id.*

One of CSOs then explained to Plaintiff that Deputy Peerson determined that there had been a "disturbance" and asked Plaintiff for his driver's license information. *Id.* ¶ 16. Plaintiff complied with the order because he did not feel free to leave. *Id.* ¶ 37. When Plaintiff asked the CSO why he needed the information, the CSO explained to Plaintiff that he would file a disturbance report against Plaintiff. *Id.* ¶ 16. However, Plaintiff claims there was no disturbance, and that Deputy Peerson admitted there was in fact no disturbance. *Id.* ¶ 17. Plaintiff further alleges that Deputy Peerson then authorized Plaintiff's ejection from the courthouse. *Id.* ¶¶ 16, 20. Based on these events, Plaintiff claims that Deputy Peerson violated his First Amendment rights by retaliating against him for addressing a grievance, and that Deputy Peerson violated his Fourth Amendment rights by having him "seized, detained, . . . and escorted out of the federal building" without reasonable suspicion. *Id.* ¶¶ 24-38.

Deputy Peerson and the Government moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. # 13. The Court granted the motion on August 28, 2013 ("August 2013 Order"). Dkt. # 19. As to Plaintiff's claims against the Government for false imprisonment and negligence, the Court held that it lacked jurisdiction because the Government could not be held responsible under the Federal Tort Claims Act ("FTCA") for acts of the CSOs because they were employees of Akal, an independent contractor to the U.S. Marshal Service. *See id.* The Court dismissed these claims without leave to amend. *See id.* As to Plaintiff's claims against Deputy Peerson for violation of the First and Fourth Amendments, supervisory liability, and violations of the Bane Act, the Court dismissed these claims as well. *See id.* However, the Court granted Plaintiff leave to amend these claims against Deputy Peerson. *See id.*

Plaintiff then filed a First Amended Complaint ("FAC") reasserting claims against Deputy Peerson for violations of the First and Fourth Amendments, supervisory liability, and violations of the Bane Act. Dkt. # 22. Plaintiff also moved for reconsideration of the Court's August 2013 Order. Dkt. # 29. Plaintiff's motion for reconsideration challenged the Court's prior dismissal of his FTCA claims against the Government for lack of subject matter jurisdiction, along with his Fourth Amendment claim against Deputy Peerson. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|

| Title | *Price v. Peerson, et al.* |
|---|---|

Before the Court considered Plaintiff's motion for reconsideration, Deputy Peerson filed the instant Motion to Dismiss Plaintiff's FAC. Dkt. # 30. Defendant's Motion seeks to dismiss Plaintiff's causes of action for his alleged violations of the First and Fourth Amendment, supervisory liability, and violations of the Bane Act. *Id.*

Although Plaintiff's motion for reconsideration and Defendant's Motion to Dismiss the FAC were consolidated for hearing on the same date, the Court reviewed Plaintiff's motion first because it presented threshold issues applicable to both motions, such as the proper standard by which to adjudge Plaintiff's Fourth Amendment claim against Defendant. *See* Dkt. # 43. With respect to Plaintiff's motion for reconsideration, the Court denied in part and granted in part the motion. *See* Dkt. # 43. The Court denied Plaintiff's request for reconsideration of his FTCA claims against the Government, and granted reconsideration of Plaintiff's Fourth Amendment claim against Defendant. *Id.*

Now before the Court is Defendant's Motion to Dismiss Plaintiff's FAC under Rule 12(b)(6). Dkt. # 30.

II.     Legal Standard

   A.     Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief. *See id.*

In evaluating a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 679. First, the court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, (1993). Based upon these allegations, the court must draw all reasonable inferences in favor of the plaintiff. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

#30 (11/25 hrg off)

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

2005).  Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679.  Despite the liberal pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal.  *See id.* at 678-79.

III.  Discussion

Defendant first argues that Plaintiff's FAC fails to state a *Bivens* claim under the Fourth Amendment and First Amendment.  *See Mot.* 4:7-5:23.  Defendant also argues that Plaintiff's FAC fails to state a claim for supervisory liability with respect to his Constitutional claims.  *See Mot.* 7:10-8:2.  Finally, Defendant further contends that Plaintiff's FAC fails to state claims under the Bane Act, Cal. Civ. Code § 51.2.  *See Mot.* 10:5-12.  The Court addresses each of Defendant's arguments in turn.

    A.    *Bivens* Claims

Plaintiff's FAC brings a cause of action against Defendant for violations of the First Amendment and Fourth Amendment pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See FAC* ¶¶ 24-38.

*Bivens* established that victims of a constitutional violation by a federal officer have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.  *Bivens*, 403 U.S. at 396.  A cause of action under *Bivens* is thus a judicially created counterpart to civil rights actions under 42 U.S.C. § 1983 for claims against federal officers, who ordinarily do not act under color of state law.  *Gibson v. United States*, 781 F.2d 1334,1341 (9th Cir. 1986) *cert. denied,* 479 U.S. 1054 (1987).

*Bivens* itself provides for a private right of action for violations of the Fourth Amendment.  *Bivens*, 403 U.S. at 392-97.  The *Bivens* right of action has also been extended to address violations of the First Amendment.  *See Gibson,* 781 F.2d at 1342; *see also United States v. Mayer,* 503 F.3d 740, 749 (9th Cir. 2007) (suggesting that plaintiff-organization's claim against FBI agent for burdening its associational rights under First Amendment was more properly asserted through a *Bivens* action).  The Court first addresses the purported violation of the Fourth Amendment; it then addresses the First Amendment claim.

        i.    *Fourth Amendment*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**#30 (11/25 hrg off)**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

With respect to Plaintiff's *Bivens* claim under the Fourth Amendment, *see FAC* ¶¶ 34-38, Defendant argues that Plaintiff's claim should be dismissed on four grounds.

### a. The August 2013 Order

First, Defendant avers that Plaintiff's FAC fails to state a claim under the Fourth Amendment in light of the legal standard the Court adopted in the August 2013 Order dismissing Plaintiff's claim. *See Mot.* 5:25-7:7. In that Order, the Court found that "when an individual going through a security checkpoint asks questions about various security requirements and even goes so far as to ask who [sic] he could contact about the security policy, this is sufficient to arouse reasonable suspicion . . . ." Dkt. # 19.

Defendant is correct to assert that the Court made this statement. *Id.* However, as the Court explained in its Order granting reconsideration of Plaintiff's Fourth Amendment claim, the Court erred in crafting such a broad proposition of law. *See* Dkt. # 43. When an individual, like Plaintiff, goes through a security checkpoint and asks questions about various security requirements and to whom he might contact about the security policy, this does not *ipso facto* create reasonable suspicion that the individual is carrying a weapon or contraband to justify a Terry stop. *See id.* Thus, while Defendant's argument as to the appropriate legal standard to apply in this case once held water, upon second look, it no longer does, especially given the Court's discussion *infra*. *See id.*

### b. Failure to State a Claim

Defendant next argues that Plaintiff fails to state a claim under the Fourth Amendment, even assuming that Defendant directed the search. *Mot.* 6:21-23. The Court disagrees with Defendant here too, as Plaintiff's FAC adequately states a claim that Defendant violated his Fourth Amendment right to be free from unlawful seizures.

The Fourth Amendment "guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 392 (1971). The Fourth Amendment prohibits "unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Ramirez v. City of Beuna Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). Under the Fourth Amendment, a detention or seizure of a person occurs when an officer, "by means of physical force or show of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|

| Title | *Price v. Peerson, et al.* |
|---|---|

authority, has in some way restrained the liberty of a citizen . . . ." *United States v. Orman*, 486 F.3d 1170, 1175 (9th Cir. 2007).

Further, under the *Terry* doctrine, a police officer may briefly stop or seize a person to investigate suspected criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968). Questioning by law enforcement officers constitutes an investigatory stop only if a reasonable person would believe that he was not free to leave. *Orman*, 486 F.3d at 1175. An investigatory stop is constitutionally permissible so long as it was justified at its inception and if the action taken was reasonably related in scope to the circumstances which justified the interference. *United States v. Acosta-Colon*, 157 F.3d 9, 14 (9th Cir. 1998) (citation omitted). Police may "detain or seize an individual for brief, investigatory purposes, provided the officers making the stop have reasonable suspicion that criminal activity may be afoot." *United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009). To determine whether an investigatory stop was supported by reasonable suspicion, the court must consider "whether, in light of the totality of circumstances, the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Palos-Marquez*, 591 F.3d 1272, 1274-75 (9th Cir. 2010) (citation and quotations omitted). "The reasonable suspicion standard is less demanding standard than probable cause and merely requires a minimal level of objective justification." *Gallegos*, 308 F.3d at 990 (9th Cir. 2002).

In this case, Plaintiff alleges that after Defendant "summoned the other officers to intentionally seize Plaintiff," *id.* ¶ 38, one of the CSOs stopped Plaintiff, and two other CSOs "encircle[d]" him, preventing his exit from the courthouse, *id.* ¶¶ 36, 38. Plaintiff claims that he was then removed from the courthouse hallway and placed in an enclosed waiting room, where the three CSOs asked him about his conversation with Defendant. *Id.* ¶ 37. Plaintiff further alleges that he was never told that he was free to leave, and that the interrogation eventually resulted in his ejectment from the federal courthouse. *Id.* ¶ 16, 37. These allegations adequately state that an investigatory stop occurred under the *Terry* doctrine because a reasonable person in Plaintiff's position would not have believed that he was free to leave. *See U.S. v. Ackerman*, No. 07-30469, 293 F. App'x 491, 492 (9th Cir. Sept. 16, 2008) ("[W]e conclude that when [the officer] instructed [plaintiff] to "stay here" and additional armed officers surrounded [plaintiff], a reasonable person in [plaintiff's] position would have believed he was not free to leave.").

The Court also finds that Plaintiff's FAC adequately pleads that a constitutional violation occurred as a result of this investigatory stop. Although the "reasonable suspicion" standard requires only a "minimal level of objective justification," the allegations in Plaintiff's FAC, which must be accepted as true in the face of a motion to dismiss, show that Defendant did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|

| Title | *Price v. Peerson, et al.* |
|---|---|

have a "minimal level of objective justification" to conduct the stop. *Gallegos*, 308 F. 3d at 990. As explained *supra*, Plaintiff alleges that after he asked Defendant "to whom may I contact about the policy requiring removal of shoes upon entering the Spring Street Courthouse," a CSO suddenly confronted Plaintiff and commanded him to stop, preventing his exit from the courthouse. *FAC* ¶ 14-15. Plaintiff further alleges that he asked the CSO why he was being stopped and that the CSO informed Plaintiff that Defendant believed "there was a disturbance." *Id.* ¶ 16. According to Plaintiff, however, Defendant later declared that Plaintiff had not in fact caused a disturbance. *Id.* ¶ 17.

In view of these allegations, the "totality of circumstances" does not show "a particularized and objective basis for suspecting [Plaintiff] of criminal activity." *Palos-Marquez*, 591 F.3d at 1274 (9th Cir. 2010); *Arvizu,* 534 U.S. at 273. Courts in this District and the Ninth Circuit commonly find that a claim under the Fourth Amendment for an improper *Terry* stop should not be dismissed when, as here, the plaintiff alleges that he presented ordinary, rather than unusual, behavior. *See Andrew v. Dominquez*, No. CV 11-08263-MWF (VBK), 2012 U.S. Dist. LEXIS 185368, at *10-14 (C.D. Cal. Dec. 13, 2012); *Barber v. Santa Maria Police Dep't*, No. CV 08-6273-DDP (MLG), 2009 U.S. Dist. LEXIS 72651, at *10-13 (C.D. Cal. Feb. 9, 2009); *Washington v. Gilmore*, No. C-97-4062 PJH, 1998 U.S. Dist. LEXIS 17309, at *17-23 (N.D. Cal. Oct. 30, 1998).

Plaintiff's FAC does not show that Defendant or the CSOs considered any "indications of drugs or drug dealing, or of weapons, nor did they indicate that they had any information that [Plaintiff] was involved in any criminal activity." *Washington*, 1998 U.S. Dist. LEXIS 17309, at *21. There is also no indication that Plaintiff "seemed nervous or took any evasive action when the [CSOs] approached, or refused to identify [himself] when requested to do so." *Id.*; *cf. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Our cases have . . . recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion."). Nor did Defendant or the CSOs articulate any coherent "grounds for believing that [Plaintiff] posed any threat to the safety of the officers or other persons." *Washington*, 1998 U.S. Dist. LEXIS 17309, at *21.

Although Defendant originally mentioned that Plaintiff created a "disturbance," Defendant purportedly recanted this statement. *See id.*¶ 17. But even if Defendant maintained his belief that Plaintiff's inquiry regarding the shoe removal policy created a "disturbance," the Court fails to see, based on the allegations at hand, how Plaintiff's conduct would have truly generated a disturbance. Asking a question about a shoe removal policy, without any concomitant, unusual behavior surely does not create a disturbance to arouse reasonable suspicion. *See Washington*, 1998 U.S. Dist. LEXIS 17309, at *20 ("Behavior that is common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

conduct exhibited by the population at large is not a sufficient basis for creating reasonable suspicion to justify an investigatory stop.") (citing *Brown v. United States*, 443 U.S. 47, 52 (1979)). In fact, Plaintiff specifically alleges that "there was no evidence to support the conclusion that Plaintiff's behavior at the courthouse that day (September 20, 2011) was so bizarre, irrational and belligerent, that a court officer could draw a reasonable inference that Plaintiff posed a danger to others." *FAC* ¶ 21. Finally, it bears mention that Plaintiff's detention did not occur *before* he proceeded through security – it occurred only *after* Plaintiff had already cleared security without posing any issue. This furthers the Court's finding that, accepting as true all Plaintiff's non-conclusory and factual allegations, Plaintiff's actions were anything but suspicious or "disturbing" when he inquired with Defendant about the shoe removal policy. *Cf. Kaufman*, 1998 WL 314744, at *2-4.

Therefore, at most, Plaintiff's allegations show that Defendant had only an "inchoate or unparticularized suspicion" or "hunch" that criminal activity was afoot. *United States v. Sokolow,* 490 U.S. 1, 7(1989). Because such opaque suspicion falls below the minimal level of objective justification necessary for conducting an investigatory stop under the Fourth Amendment, *see id.*, Defendant's second argument fails. Plaintiff's FAC adequately pleads that he was subjected to an investigatory stop without reasonable suspicion, and thus in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.

    c.  *Particularized Conduct*

Relatedly, Defendant further moves to dismiss Plaintiff's Fourth Amendment claim because "Plaintiff has not, and cannot, allege that [Defendant] himself seized Plaintiff." *Mot.* 6:24-7:7. In other words, Defendant argue that Plaintiff fails to assert a *Bivens* claim against Defendant for violating the Fourth Amendment because Plaintiff fails to allege conduct particularized to Defendant. *See Mot.* 7:1-5.

In order for Defendant to be held liable for a *Bivens* cause of action under the Fourth Amendment, Plaintiff's allegations must be particularized to Defendant's individual conduct. *See Jones v. Williams*, 297 F.3d 930, 934-35 (9th Cir. 2002); *see also Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) (explaining that "a *Bivens* action is the federal analog to an action against state or local officials under [42 U.S.C.] § 1983"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). Plaintiff may allege Defendant's individual conduct by not only stating that Defendant personally detained Plaintiff, but also by stating that Defendant participated in Plaintiff's detention. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("A person deprives another of 'a constitutional right, within the meaning of section 1983, if he does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.'") (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Although Defendant's Motion correctly notes that Plaintiff fails to plead that Defendant himself seized Plaintiff, s*ee Mot.* 9:3-4, this does not dispose of the matter. Plaintiff's FAC explicitly states that Defendant participated in Plaintiff's detention by directing the CSOs to seize him. *See FAC* ¶¶ 16, 19, 35-38. For instance, Plaintiff generally claims that Defendant "had [him] seized, detained, a report filed and [he] was escorted out of the federal building." *FAC* ¶ 35. However, Plaintiff also specifically alleges that Defendant "sought the assistance of the [CSOs] to effect a seizure of Plaintiff," *id.* ¶ 36, and "summoned the other officers to intentionally seize Plaintiff," *id.* ¶ 38. Plaintiff further alleges that one of the CSOs told him that Defendant was the one who determined that Plaintiff had caused a "disturbance" resulting in the seizure, *id.* ¶ 16, and that "but for the actions of [Deputy Peerson], the [three CSOs] would not have seized Plaintiff, filed a report, and removed [Plaintiff] from the building," *id.* ¶¶ 26, 28. Contrary to Defendant's argument, then, Plaintiff's allegations, which the Court must accept as true at this stage of the case, sufficiently show that Defendant participated in Plaintiff's seizure. Defendant's third argument therefore fails.

### d.     *Qualified Immunity*

Finally, Defendant argues that even if the Court finds that the FAC adequately pleads a Fourth Amendment claim, this claim should nonetheless be dismissed because Defendant is entitled to qualified immunity. *See Mot.* 8:5-9:28. Plaintiff's Opposition responds that Defendant is not entitled to qualified immunity because Defendant violated Plaintiff's clearly established Fourth Amendment rights. *See Opp.* 6:14-11:13, 13:15-16:2. At least at this stage in the litigation, the Court agrees with Plaintiff that qualified immunity does not apply to the allegations at hand as the Court must accept Plaintiff's allegations as true. S*ee Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963-64 (9th Cir. 2004) ("[I]n the usual case where a defendant asserts an official immunity defense, the district court first decides whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity.").

The doctrine of qualified immunity insulates government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To determine whether a government official is entitled to qualified immunity, the Court must conduct a two-step test. *Lacey v. Maricopa Cnty.*, 693 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

896, 915 (9th Cir. 2012) (en banc). The Court must first determine whether the facts alleged, viewed in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right. *Id.* The Court must then determine whether the constitutional right in question is clearly established. *Id.* The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Accordingly, the Supreme Court repeatedly stresses the importance of resolving qualified immunity questions at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

As discussed *supra*, Plaintiff's FAC satisfies the first prong of the qualified immunity test by alleging that Defendant violated his Fourth Amendment right to be free from unreasonable searches and seizures. With the first prong of the qualified immunity analysis resolved, the only remaining inquiry is whether the law regarding Defendant's alleged violation of Plaintiff's Fourth Amendment rights was "clearly established" at the time of the alleged offense. *See Lacey*, 693 F.3d at 915.

For a right to be clearly established for purposes of qualified immunity, the "contours of the right must be sufficiently clear that [at the time the action is taken] a reasonable official would understand that what he is doing violates that right." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (internal citations and quotations omitted). The precise act challenged need not have previously been held unlawful in order to defeat qualified immunity, as long as the unlawfulness of the act is "apparent" in light of pre-existing law. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

The *sin qua non* of Defendant's argument is that Plaintiff cannot prove that Defendant violated a "clearly established" right. *See Reply* 1:22-6:3. Defendant supports his conclusion with citation to three cases from the United States Supreme Court. *See Stanton v. Sims*, No.12-1217, 2013 WL 5878007, at *1-5 (S. Ct. Nov. 4 2013) (per curiam); *Ryburn v. Huff*, 132 S. Ct. 987, 990 (2012); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). While the Court agrees with Defendant's general discussion of these cases, Defendant fails to acknowledge that all of the cases agree on one very important point: Defendant may not hide behind the shield of qualified immunity simply because there is no existing case law discussing, and ultimately prohibiting, an officer from conducting a *Terry* stop under the same facts as presented in this case. *See Stanton*, 2013 WL 5878007, at *2 ("We do not require a case directly on point before concluding that the law is clearly established . . . ."); *accord al-Kidd*, 131 S. Ct. at 2083. Rather, as the Supreme Court repeatedly explains, and as the Court's most recent decision discussing qualified immunity repeats, a court may find that the law is "clearly established" when "existing precedent . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

place[s] the statutory or constitutional question beyond debate." *Stanton*, 2013 WL 5878007, at *2; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, [ ] but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

The Supreme Court's most recent qualified immunity decision in in *Stanton* provides a useful point of contradistinction to the instant case. *See Stanton*, 2013 WL 5878007, at *1-5. In *Stanton*, the Supreme Court considered whether an officer was entitled to qualified immunity notwithstanding the plaintiff's allegations that the officer searched her home without a warrant in violation of the Fourth Amendment. *See id.* In view of existing precedent at the time the Ninth Circuit ruled on the matter, the Supreme Court determined that the law was not clearly established as to whether an officer may enter a home without a warrant while in hot pursuit of a misdemeanor suspect. *Id.* at *3-5. In fact, the law was severely fractured at the time of the Ninth Circuit's decision. *Id.* In the Supreme Court's words:

> Two opinions of this Court were equivocal on the lawfulness of his entry; two opinions of the State Court of Appeal affirmatively authorized that entry; the most relevant opinion of the Ninth Circuit was readily distinguishable; two Federal District Courts in the Ninth Circuit had granted qualified immunity in the wake of that opinion; and the federal and state courts of last resort around the Nation were sharply divided.

*Id.* at *4. With these words, the Court held that the officer was entitled to qualified immunity because the law was not clearly established, and thus the officer was not "plainly incompetent." *Id.* at *5.

This case is unlike *Stanton*. Whereas the factual and legal questions presented in *Stanton* were complex and largely undecided, this is not so here. Based on Plaintiff's allegations, which the Court must accept as true at this stage in the litigation, this is a simple case, with straightforward precedent. *See Leatherman*, 507 U.S. at 164.

According to Plaintiff, he entered a federal courthouse; he successfully passed through security; he asked a question about the courthouse's shoe removal policy; and he was stopped and seized as a result. *See FAC ¶¶ 13-17.* Moreover, Plaintiff alleges that while inside the courthouse, he "was acting in a rational, controlled manner" and "made no threats to anyone." *FAC ¶ 21.* Admittedly, other federal courts have not been presented with the exact same fact pattern; however, the Court cannot imagine how it, or any other court for that matter, could find

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

#30 (11/25 hrg off)

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

any reasonable suspicion to seize Plaintiff based on these allegations. Ultimately, unlike in *Stanton*, there are no contradictory decisions from other federal courts on this issue. Nor is there a split of authority on the issue. This is a simple case, and one which easily presents a violation of the time-worn *Terry* doctrine.

In fact, just a few months ago, the Ninth Circuit held in *Rutherford v. McKissack* that an officer was not entitled to qualified immunity based on roughly comparable facts. *See Rutherford v. McKissack*, 505 F. App'x 677, 678 (9th Cir. 2013) *cert. denied sub nom. Chin v. Rutherford*, 133 S. Ct. 2827 (2013); *cf. Ryburn*, 132 S. Ct. at 990 (denying qualified immunity because "[n]o decision of this Court has found a Fourth Amendment violation on facts even roughly comparable to those present in this case."). In denying the officer qualified immunity, the Ninth Circuit in *Rutherford* emphasized that plaintiff had committed only a minor traffic violation, and, most importantly, that the plaintiff was compliant and non-confrontational before the officer conducted the *Terry* stop. *Rutherford*, 505 F. App'x at 678. According to the Ninth Circuit, facts such as these precluded the officer, and any other reasonable officer, from having reasonable suspicion that the plaintiff was armed or dangerous. *Id.*

As in *Rutherford*, Plaintiff alleges that he was compliant and non-confrontational before he was seized. *FAC* ¶ 21 ("Plaintiff was . . . acting in a rational, controlled manner . . . ."). In fact, Plaintiff claims that he "made no threats to anyone, was not under detention while speaking to [Defendant], made no references to weapons, was not threatening to violate a court order." *Id.* Furthermore, whereas the *Rutherford* plaintiff actually violated the law, albeit through a minor traffic violation, Plaintiff alleges that he never did so while in the courthouse. *Id.* ("Plaintiff . . . made no threats to anyone, was not under detention while speaking to [Defendant], made no references to weapons, and was not threatening to violate any court order . . . .").

Notwithstanding the fact that *Rutherford* involved a traffic stop, while this case involves an informal inquiry as to the courthouse shoe removal policy, both cases present facts involving seizures without an iota of reasonable suspicion. And even beyond *Rutherford*, federal courts in this District and the Ninth Circuit routinely find that an officer may not subject a person to a *Terry* stop for exhibiting ordinary, rather than unusual behavior. *See Bedford v. City of Hayward*, No. 3:12-cv-00294-JCS, 2012 U.S. Dist. LEXIS 148875, at *23-26 (N.D. Cal. Oct. 15, 2012) (rejecting qualified immunity defense because officer subjected individual to *Terry* stop despite the fact that the individual did not present any suspicious behavior); *see also Washington v. Gilmore*, No.C-97-4062 PJH, 1998 U.S. Dist. LEXIS 17309, at *20 (N.D. Cal. Oct. 30, 1998) ("Behavior that is common conduct exhibited by the population at large is not a sufficient basis for creating reasonable suspicion to justify an investigatory stop.") (citing *Brown v. United States*, 443 U.S. 47, 51-52 (1979)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

#30 (11/25 hrg off)

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

As such, precedent dating back all the way back to the Supreme Court's hallmark decision in *Terry v. Ohio* clearly establishes that a person cannot be stopped and seized for such innocuous conduct as asking a question about a security procedure. *See Terry*, 392 U.S. 1, 37 (1968); *see also Opp.* 13:15-28. If this were not the case, the Fourth Amendment would lapse into desuetude, and eventually a dead letter, for government officers would be entitled to conduct a *Terry* stop any time any person asks any question about any security measure while inside a courthouse. This surely places the constitutional question before the Court beyond debate. Or, as stated in the Supreme Court's new vernacular: the facts as alleged show that Defendant was "plainly incompetent" in authorizing Plaintiff's seizure. *See Stanton*, 2013 WL 5878007, at *2, 5. Thus, at least at stage of the case, the Court cannot accept Defendant's qualified immunity defense. Defendant's Motion is therefore DENIED as to Plaintiff's Fourth Amendment claim.

   *ii.*  First Amendment

In addition to Plaintiff's *Bivens* claim under the Fourth Amendment, Plaintiff also raises a *Bivens* claim under the First Amendment against Defendant for redressing grievances to the government without retaliation. *See FAC* ¶¶ 24-33. A plaintiff may allege a *Bivens* claim under the First Amendment when a government officer's "action [is] designed to retaliate against and chill political expression." *Gibson*, 781 F.2d at 1338 (citation omitted). To bring this type of claim, a plaintiff must allege that the officer "took action that would chill or silence a person of ordinary firmness from future First Amendment activities." *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (internal quotes and citations omitted). Moreover, a plaintiff must allege the defendant's intent to silence him. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994) ("The defendant's intent is an element of the claim."); *Gibson*, 781 F.3d at 1342 (holding that plaintiffs may bring a *Bivens* claim under the First Amendment where plaintiffs allege that defendants acted with the impermissible motive of curbing protected speech). A plaintiff shows a defendant's intent by "alleg[ing] discrete acts of . . . intimidation directly solely at silencing him." *Id.* at 1338 (citation omitted); *see also Mendocino Envtl. Ctr.*, 14 F.3d at 464 ("[W]here a plaintiff alleges discrete acts of police surveillance and intimidation directed solely at silencing her or him, a civil rights claim will lie.") (citations and quotations omitted).

In view of the legal standard for asserting a First Amendment retaliation claim, the Court finds that Plaintiff adequately states a claim. First, and contrary to Defendant's contention, the FAC sufficiently states that Defendant "took action that would chill or silence a person of ordinary firmness from future First Amendment activities." *Skoog*, 469 F.3d at 1232. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|

| Title | *Price v. Peerson, et al.* |
|---|---|

particular, Plaintiff alleges that after asking Defendant about the shoe removal policy and thanking Defendant for his response, *see FAC* ¶¶ 14-15, Defendant determined that there had been a "disturbance," and that the CSOs created a "disturbance" report in the Justice Department database. *Id.* ¶¶ 16, 18. Plaintiff even claims that although Defendant allegedly admitted that he "was not being disruptive," he was "ejected" from the federal courthouse as a result of asking Defendant a question about the shoe removal policy. *Id.* ¶¶ 26-27. Plaintiff thus purports that Defendant filed the disturbance report against him and authorized his ejectment from the courthouse "in retaliation for questioning [Defendant's] authority" and "in retaliation for addressing a grievance with [Defendant]." *Id.* ¶¶ 19, 25-28, 33. Furthermore, as a result of Defendant's purported retaliation, Plaintiff claims that he has been so chilled that he has not entered the U.S. Marshal's office again, nor has inquired about the shoe removal policy. *Id.* ¶ 27. Accepting these allegations as true, the Court finds that Plaintiff not only pleads discrete acts of retaliation by Defendant, but that Defendant's acts would silence a person of ordinary firmness from inquiring about the a security procedure such as the shoe removal policy. *See Skoog*, 469.3d at 1232.

The Court also finds that Plaintiff adequately alleges Defendant's "intent" to retaliate. *See Mendocino Envtl. Ctr.*, 14 F.3d at 464. Because the Court must accept as true Plaintiff's repeated claim that he had not created any disturbance whatsoever, *id.* ¶¶ 21, 33, and that Defendant admitted as much, *id.* ¶ 26, it necessarily follows that Defendant intended to retaliate against Plaintiff. *See id.* ¶¶ 25-28. The Court cannot imagine any other veritable, or even plausible, reason for Defendant's conduct. How could there be any legitimate law enforcement objective in reporting Plaintiff as a "disturbance," and then ejecting Plaintiff from the courthouse, for simply asking a question about a courthouse security procedure?

In light of the absence of any reasonable explanation, Plaintiff accordingly claims that "but for [Defendant's] retaliation, [he] would not have been detained and a 'disturbance' report would not have been filed and distributed." *FAC* ¶ 28. This allegation is sufficient in and of itself to state a claim for retaliation under the First Amendment. *See Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (holding that in order to establish a claim of retaliation in violation of the First Amendment, plaintiff must allege that the "officer's desire to chill his speech was a but-for cause of their allegedly unlawful conduct."). Yet Plaintiff even claims that Defendant created and filed the "false 'disturbance'" report for the "sole purpose" of voicing his question ever again. *FAC* ¶ 19; *see also id.* ¶ 31 ("As a result of speaking with [Defendant], Plaintiff was punished by [Defendant's] false claim that Plaintiff had created a "disturbance" with the sole purpose of discouraging Plaintiff from ever addressing the subject matter or contacting a government official again."). Plaintiff's allegations as to Defendant's intent are hardly as speculative or conclusory as Defendant asserts. Accordingly, the Court finds that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|

| Title | *Price v. Peerson, et al.* |
|---|---|

FAC remedies the deficiencies of Plaintiff's original Complaint, and now adequately pleads a First Amendment retaliation claim against Defendant.

Notwithstanding the adequacy of Plaintiff's pleadings, Defendant offers one final argument in support of his Motion. Just as with Plaintiff's Fourth Amendment claim, Defendant argues that he is immune from Plaintiff's First Amendment claim under the doctrine of qualified immunity. *See Mot.* 8:5-9: 28. Because much of Defendant's qualified immunity argument under the First Amendment overlaps with Defendant's Fourth Amendment defense, the Court spends less time rejecting the argument here. *See Mot.* 8:3-9:28; *Reply* 1:21-7:20. However, a few key comments warrant repetition.

First, Defendant's Reply argues that even if the Court accepts Plaintiff's allegations as true, Defendant is shielded by qualified immunity because his "action was lawful according to courts in the jurisdiction where [Defendant] acted." *Reply* 3:17-21. Such a statement troubles the Court. According to Plaintiff, Defendant filed a disturbance report against him, and even ejected him from the courthouse, simply because he asked Defendant a question about the courthouse shoe removal policy. *FAC* ¶¶ 24-33. Under these facts, the Court fails to see how any court in this jurisdiction, or a court in any jurisdiction, could find Defendant's conduct lawful under the First Amendment. To be sure, Defendant's action "strikes at the heart of the First Amendment." *Gibson*, 781 F.2d at 1338.

Second, Defendant makes much of the fact that Plaintiff has failed to cite any analogous case law. *Reply* 4:3-6. However, as noted *supra*, Plaintiff is not required to cite case law discussing identical facts as asserted in this case. *See Stanton*, 2013 WL 5878007, at *2. ("We do not require a case directly on point before concluding that the law is clearly established . . . ."); *accord al-Kidd*, 131 S. Ct. at 2083. Rather, Plaintiff need only reference "existing precedent [that] . . . place[s] the statutory or constitutional question beyond debate." *Stanton*, 2013 WL 5878007, at *2; *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The precedent Plaintiff cites certainly places the constitutional question before the Court beyond debate. *See Opp.* 5:24-6:8, 12:18-13:11. Indeed, "the right to be free from retaliation by government actions was well established in [even] 2008." *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 928 (N.D. Cal. 2010) (citing *Beck v. Upland*, 527 F.3d 853 (9th Cir. 2007)). Therefore, while Plaintiff's allegations may not hold water during later phases of litigation, at least at this current stage of the proceedings, the Court must reject Defendant's qualified immunity defense. Defendant's Motion is thus DENIED as to Plaintiff's First Amendment claim.

    B.    <u>Supervisory Liability</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

Plaintiff also brings a supervisory liability claim against Defendant under the Fourth Amendment. *See FAC* ¶¶ 39-41. In order for Plaintiff to properly assert a supervisory liability claim, Plaintiff must allege some facts that would support a claim that Defendant: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or "implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations and quotations omitted); *accord Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Furthermore, supervisory liability may not be imposed on Defendant under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 677. "In a section 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* In other words, Defendant is only liable for his own misconduct. *See id.*

Defendant offers three reasons why Plaintiff's supervisory liability claim must be dismissed. *See Mot.* 7:10-8:2. First, Defendant argues that the August 2013 Order found that he could not be held liable under the theory of supervisory liability for the actions of the CSOs who actually seized him because the Court found that no constitutional deprivation occurred. *See Mot.* 7:10-12. Although this was a true statement of law at the time the Court issued the August 2013 Order, it no longer is. Because the Court granted Plaintiff's motion for reconsideration as to his Fourth Amendment claim, Plaintiff is no longer precluded from asserting a claim for supervisory liability under the Fourth Amendment against Defendant. *See* Dkt. # 43.

Second, Defendant avers that he cannot be held liable for the actions of the CSOs because Plaintiff has not alleged that he actually and knowingly participated in the alleged unconstitutional seizure. *See Mot.* 9:13-24. This argument fails as well. As discussed *supra*, Plaintiff adequately pleads Defendant's particularized conduct in effectuating Plaintiff's seizure. For instance, Plaintiff alleges that Defendant "sought the assistance of the [CSOs] to effect a seizure of Plaintiff," *FAC* ¶ 36, and "summoned the other officers to intentionally seize Plaintiff," *id.* ¶ 38. Plaintiff further alleges that one of the CSOs told him that Defendant was the one who determined that Plaintiff had caused a "disturbance" resulting in the seizure, *id.* ¶ 16, and that "but for the actions of [Deputy Peerson], the [three CSOs] would not have seized Plaintiff, filed a report, and removed [Plaintiff] from the building," *id.* ¶¶ 26, 28. Allegations like these, among others enumerated in the FAC, surpass rote recitation of the elements of a Fourth Amendment claim. *Cf. Iqbal*, 566 U.S. at 685.

Third, Defendant finally argues on Reply that Plaintiff cannot state a supervisory liability claim against him because the Defendant "did not supervise the CSOs nor was he in their line of command." *See Reply* 7:13-17. Defendant supports this argument with citation to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

declaration of Mr. Ponzio, a Senior Inspector with the United States Marshals Service. *See id.*; *see also Ponzio Decl.*, ¶ 7. Although the Court considered Mr. Ponzio's declaration when granting Defendant's motion to dismiss Plaintiff's FTCA claims as stated in the original Complaint, the Court cannot, and will not, do so now.

In dismissing Plaintiff's FTCA claims, the Court considered Mr. Ponzio's declaration only because Defendant challenged subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Dkt. # 13. Rule 12(b)(1) allows the Court to consider not just Plaintiff's allegations, but "affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.3d 558, 560 (9th Cir. 1988); *see also White v. Lee*, 227 F.3d 1214, 1242 ("With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment."). But unlike Defendant's prior motion, Defendant's current Motion argues for dismissal under Rule 12(b)(6) only. Defendant may not, then, rely on Mr. Ponzio's declaration as it falls wholly outside the scope of Plaintiff's pleadings. *See United States v. LSL Biotechnologies*, 379 F.3d 672, 700 n.13 (9th Cir. 2004) ("When a district court rules on a Rule 12(b)(1) motion, unlike a 12(b)(6) motion, it may consider affidavits or other extra-pleading evidence.") (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). Because all three of Defendant's arguments fail, the Court DENIES the Motion as to Plaintiff's supervisory liability claim.

    C.    <u>Bane Act</u>

Finally, Plaintiff also brings two claims against Defendant under the Bane Act, Cal. Civil Code § 52.1, for violation of his First and Fourth Amendment rights. *See* FAC ¶¶ 43-54. The Bane Act provides that a person may bring a cause of action against anyone who "interferes by threats, intimidation or coercion, with the exercise or enjoyment" of any constitutional or statutory right. *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 110 (1998) (citing *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995)). The express language of the Bane Act does not require a plaintiff to allege that the defendant committed violence or threatened violence in order to state a claim. *See Moreno v. Town of Los Gatos*, 267 F. App'x 665, 666 (9th Cir. 2008) (citing *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841 (2004)). A plaintiff need only allege that the defendant "threat[ened], intimidate[ed] or coerc[ed]" him, resulting in the violation of his constitutional or statutory rights. Cal. Civ. Code § 52.1(a); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (holding that absent a form of coercion, there is no Bane Act violation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#30 (11/25 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

Defendant argues for dismissal of Plaintiff's Bane Act claims on two grounds. *See Mot.* 10:5-12. Defendant first contends that because Plaintiff has failed to allege sufficient facts showing that a constitutional violation occurred under either the First or Fourth Amendments, Plaintiff's Bane Acts claims necessarily fail. *See Mot.* 10:5-7. However, as the Court explains *supra*, Plaintiff has adequately alleged both a First Amendment and a Fourth Amendment claim against Defendant.

Nevertheless, Plaintiff's Bane Act claim must still be dismissed. As Defendant further argues, Plaintiff's FAC fails to plead the required elements of a Bane Act claim. *See Mot.* 10:10-12; *Reply* 7:25-8:3. Nowhere does the FAC suggest that Defendant personally threatened, intimidated, or coerced Plaintiff, as is required under the Bane Act. *See Moreno*, 267 F. App'x at 666. Nor do Plaintiff's allegations regarding Defendant's particularized role in seizure show that Defendant's actions "were accompanied by the requisite threats, intimidation, or coercion." *Shoyoye v. Cnty. Of Los Angeles*, 203 Cal. App. 4th 947, 957 (2012).

Although Defendant allegedly authorized the seizure of Plaintiff, the CSOs were the individuals who specifically ejected him from the courthouse. *See FAC* ¶ 16 ("Suddenly, the mustached marshal, John Doe # 1, told the other marshals to escort [Plaintiff] out of the building."). Because Plaintiff fails to plead any of the required elements with respect to Defendant specifically, instead of the CSOs generally, Plaintiff's FAC fails to state a claim under the Bane Act. *See Rodriguez v. Cnty. of Contra Costa*, No. C-13-02516 SBA, 2013 U.S. Dist. LEXIS 158511, at *19 (N.D. Cal. Nov. 1, 2013) ("Critical to a Bane Act cause of action is the allegation that the defendant specifically used threats, intimidation, or coercion."); *Jennings v. City of San Diego*, No. 13-cv-00322-L (NLS), 2013 U.S. Dist. LEXIS 95668, at *10 (S.D. Cal. July 8, 2013) ("Because Plaintiff does not identify which specific actions of each Defendant violated her rights, she has failed to state a [Bane Act] claim upon which relief can be granted . . . ."). Defendant's Motion to dismiss the Bane Act claim is thus GRANTED, WITH LEAVE TO AMEND.

IV. <u>Conclusion</u>

Thus, for the foregoing reasons, the Court:

- DENIES the Motion to Dismiss Plaintiff's Fourth Amendment claim;

- DENIES the Motion to Dismiss Plaintiff's First Amendment claim;

- DENIES the Motion to Dismiss Plaintiff's supervisory liability claim;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#30 (11/25 hrg off)**

CIVIL MINUTES - GENERAL

| Case No. | CV 13-3390 PSG (JEMx) | Date | November 22, 2013 |
|---|---|---|---|
| Title | *Price v. Peerson, et al.* | | |

- GRANTS the Motion to Dismiss Plaintiff's Bane Act claims, WITH LEAVE TO AMEND. If Plaintiff wishes to file an amended complaint, he must do so on or before **December 16, 2013**.

**IT IS SO ORDERED.**